**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| AURELIO TREJO-TREJO, | ) | |
|     Plaintiff, | ) ) ) | |
| v. | ) ) | |
| ALEJANDRO MAYORKAS, in his official capacity as Secretary, U.S. Department of Homeland Security; TROY A. MILLER, in his official capacity as Acting Commissioner, U.S. Customs and Border Protection; CHRISTOPHER BULLOCK, in his official capacity as Field Office Director, U.S. Immigration and Customs Enforcement, New Orleans Field Office; and any other appropriate officials, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:26-cv-02452-SHL-atc |
|     Defendants. | ) | |

**ORDER DENYING PETITION AND TEMPORARY RESTRAINING ORDER**

On April 22, 2026, Plaintiff Aurelio Trejo-Trejo filed both (1) a Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 and (2) an Emergency Motion for Temporary Restraining Order, Stay of Removal, and Request for Release.  (ECF Nos. 1, 1-3.)  Trejo-Trejo "challenges the timing and manner of [removal] and the lawfulness of his continued detention." (ECF No. 1-3 at PageID 13.)  He seeks a temporary restraining order ("TRO") and a preliminary injunction hearing to prevent his imminent removal "so that he may pursue available statutory protections, including a reasonable fear interview and subsequent proceedings for withholding of removal and protection under the Convention Against Torture ('CAT')."  (Id. at PageID 11–12.) Respondents responded on May 4.  (ECF No. 9.)  Trejo-Trejo replied on May 6.  (ECF No. 10.)

For the reasons stated below, Trejo-Trejo's Petition and Motion for TRO are **DENIED**.

**BACKGROUND**

Trejo-Trejo, a citizen of Mexico, was granted voluntary departure by an Immigration Judge in Memphis, Tennessee, on June 9, 2011. (ECF No. 7 at PageID 27.) He timely departed the United States. (Id.) Within three years, however, he had reentered the United States, where he has remained ever since. (Id.) On April 11, 2026, he was arrested by immigration agents and subsequently detained at the West Tennessee Detention Facility. (Id.) On April 22, he filed the habeas petition and Motion for TRO. (ECF No. 1, 1-3.)

Because the Court could not discern from those filings "any legal reason why continued detention is unlawful," the following day, it ordered him to supplement his Petition and Motion "with a clear statement of the relief he seeks and its legal basis." (ECF No. 6 at PageID 23.) Trejo-Trejo filed his supplemental statement on April 27. (ECF No. 7.) In the statement, he argues that "[r]emoval to Mexico before reasonable fear screening would expose Petitioner to persecution or torture" by Mexican cartels. (ECF No. 7 at PageID 30.) He appears to abandon the relief sought in his original habeas petition, focusing instead on the TRO. (Id. at PageID 25–26.) Further, Trejo-Trejo concedes that his detention is governed under § 1231, not § 1225(b). (Id. at PageID 30.)

Respondents responded on May 4. (ECF No. 9.) From their response, it appears that Trejo-Trejo has been removed from the United States. (Id. at PageID 37 ("On May 4, 2026, ICE officials effectuated the final removal order from June 6, 2011.").) They argue that the Court should deny the habeas petition "because Petitioner is subject to a final order of removal, and his detention is governed by 8 U.S.C. § 1231." (Id. at PageID 36.) The Court should also deny the Motion for TRO and preliminary injunction, according to Respondents,

> because (1) the Court lacks jurisdiction to enjoin the Government from executing an order of removal; (2) Petitioner has not shown a substantial likelihood of success

2

on the merits and relief in the form of a stay of removal is not available in habeas; (3) and the equities weigh in the Government's favor.

(Id.) at PageID 37.)  They add that, by the time Trejo-Trejo served Respondents with the habeas petition, he had been transferred to an ICE detention facility in Winfield, Louisiana, outside the Court's jurisdiction.  (Id.)  Also, they state that Trejo-Trejo received the reasonable fear interview he was seeking, during which he ultimately "claim[ed] no fear of return to his native country."  (Id.)

Trejo-Trejo replied on May 6, two days after his removal, contesting Respondents' representation that he received a reasonable fear interview.  (ECF No. 10.)  According to Trejo-Trejo, Respondents "provide no sworn declaration, no interview record, no advisal form, no signed statement, no asylum-officer worksheet, no determination of fear, and no documentation showing compliance with the procedures required by 8 C.F.R. §§ 208.31, 241.8(e), and 1208.31."  (Id. at PageID 48.)  He faults Respondents for removing him "while this case and the requested emergency relief remained pending."  (Id.)

## ANALYSIS

"As 'courts of limited jurisdiction,' federal courts 'possess only that power authorized by Constitution and statute' and may not expand that power 'by judicial decree.'"  United States v. Lucido, 612 F.3d 871, 873 (6th Cir. 2010) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  "Eight U.S.C. § 1252(g) precludes a court from exercising jurisdiction over cases premised on any of "three discrete actions that the Attorney General may take: the decision to commence [removal] proceedings, adjudicate cases, or execute removal orders."  Hamama v. Adducci, 912 F.3d 869, 874 (6th Cir. 2018) (citation modified) (quoting Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 481 (1999)); 8 U.S.C. § 1252(g).  But the language of subsection (g) is not a "general jurisdiction limitation," and where a detained

3

immigrant that is subject to deportation proceedings challenges the legality of their detention rather than the execution of their removal, that claim is "independent" from removal.  Hamama, 912 F.3d at 877; accord K.E.O. v. Woosley, No. 25-CV-74, 2025 WL 2553394, at *3 (W.D. Ky. Sep. 4, 2025).  Thus, if an immigrant in ICE custody challenges the legality of their arrest, or asserts violations of due process during arrest, a court's jurisdiction is not barred by § 1252(g). K.E.O., 2025 WL 2553394, at *3.

Here, as an initial matter, Trejo-Trejo has abandoned his habeas petition by not including it in his clarifying statement.[1]  Thus, the only relief he sought, prior to his May 4 removal, was a TRO enjoining Respondents "from executing removal before the Government follows the mandatory reasonable fear procedures."  (ECF No. 7 at PageID 27.)  He asserts that he seeks the Court's review, not of his removal itself, but of the procedures surrounding his reasonable fear interview.  He points to concerning inconsistencies in the Form I-213 document attached to Respondents' response.  For example, Trejo-Trejo's form states that someone named "GARCIA"—decidedly not Trejo-Trejo—was "convicted of Attempted Aggravated Sexual Assault and sentenced to 3 years imprisonment."  (ECF No. 9-1 at PageID 45.)  This patent error sits just a few inches above the line, "TREJO claims no fear of returning to his native country." (Id.)  According to Trejo-Trejo, this error casts doubt on the reliability of Respondents' assertion that Trejo-Trejo was in fact afforded a reasonable fear interview.

---

[1] The Court is not convinced by Respondents' argument that transferring Trejo-Trejo out of the Western District of Tennessee after he filed the habeas petition divested this Court of habeas jurisdiction.  See Weiss v. Healy, No. 23-CV-2074, 2024 WL 1858529, at *4 (N.D. Ohio Mar. 15, 2024), report and recommendation adopted, No. 23-CV-2074, 2024 WL 1856545 (N.D. Ohio Apr. 29, 2024) ("Generally, if a district court has proper jurisdiction when a habeas petition is filed, a subsequent transfer of the prisoner will not defeat habeas jurisdiction." (citing White v. Lamanna, 42 F. App'x 670, 671 (6th Cir. 2002))).  However, that question appears moot after Trejo-Trejo abandoned his habeas claim, and the Court need not analyze it here.

Although Trejo-Trejo does not believe Respondents' representations about whether he received a reasonable fear interview, he cannot show that the Government did not in fact afford him the process he is owed. As a result, his TRO Motion is essentially asking the Court to stay removal proceedings, which it cannot do under § 1252(g). Thus, the Court lacks subject-matter jurisdiction over his TRO Motion. See 8 U.S.C. § 1252(g) ("[N]o court shall have jurisdiction to hear any cause or claim by . . . any alien arising from the decision or action by the Attorney General to . . . execute removal orders against any alien under this chapter."). The Court must thus deny his Motion for lack of jurisdiction.

Also, although Trejo-Trejo faults Respondents for transferring him to Louisiana on April 27, the same date that Respondents received service of his filings, Trejo-Trejo himself, acting through his attorneys, is not without blame. Instead of serving a TRO Motion on Respondents' counsel at the Office of the U.S. Attorney for the Western District of Tennessee on April 22, he waited for the Court to ask for clarification and then did not serve Respondents until the day of his transfer on April 27. In the future, Trejo-Trejo's attorneys may wish to serve Respondents' counsel proactively to prevent similar circumstances.

Nevertheless, it is disconcerting that Trejo-Trejo was removed from this country while under an order of this Court staying his transfer out of this district. Although this Order has found that Trejo-Trejo waived his habeas argument and that the Court lacks jurisdiction over his TRO Motion, the Court had not yet made that finding on May 4, when Respondents removed him from the United States. Instead, Trejo-Trejo remained under a no-transfer order at that time, which required resolution before his removal. Nor are Respondents absolved from following the Court's order because Trejo-Trejo had been removed to Louisiana before they were served with that order. Respondents have previously returned habeas petitioners to this District after

5

transferring them away during the pendency of a petition.[2]  Respondents have cited no law, and the Court is aware of none, that would strip the Court of its jurisdiction over a habeas petition in these circumstances.  As a result, Respondents must abide by a court's order staying transfer.

Counsel at the U.S. Attorney's Office have a positive record of compliance with court orders, but there is growing evidence that the ICE authorities with whom they coordinate are willing to defy them.  In New Jersey alone, "[t]he Trump administration has violated more than 50 orders from federal judges" in alien habeas cases.  Mattathias Schwartz et al., *Officials Violated More Than 50 Court Orders in New Jersey, Justice Dept. Tells Judge*, N.Y. Times (Feb. 18, 2026), https://www.nytimes.com/2026/02/18/us/politics/court-orders-new-jersey-immigrants.html.  District courts have sought means to curtail these violations.  In New Jersey, a judge recently stopped just short of issuing a criminal contempt order, instead ruling that Respondents would be required to file, under penalty of perjury, two declarations on the docket in every case in which the court has issued a no-transfer order:

> First, a declaration from the United States Attorney's Office indicating that it has (i) received the injunction in question and conveyed it to the appropriate personnel at ICE; and (ii) provided ICE with written legal advice on the subject of ICE's obligation to comply with that particular injunction.

> And second, a declaration from ICE confirming that it has (i) received the particular injunction in question; and (ii) received written legal advice from the United States Attorney's Office on the subject of its obligation to comply with the injunction.

---

[2] See, e.g., Godinez-Lopez v. Ladwig, No. 25-cv-02962, Response to Order to Show Cause, ECF No. 11 at PageID 49–50 (W.D. Tenn. Oct. 22, 2025) ("To attempt to comply with the Court's order to keep Petitioner in the West Tennessee Detention Center during the pendency of the Petition . . . Respondents have worked to return Petitioner to the West Tennessee Detention Center."); C.F.M.E. v. Minter, No. 26-cv-2269, Respondent's Response to Order to Show Cause, ECF No. 17 at PageID 159 (W.D. Tenn. Mar. 25, 2026) ("Three days prior to the entry of this Order, on March 17, 2026, Petitioner was transferred to a detention facility in Louisiana.  However, pursuant to the Court's Order, Respondents have confirmed that Petitioner is scheduled to be transferred back to the West Tennessee Detention Facility on March 30, 2026.").

Kumar v. Soto, No. 26-CV-00777, 2026 WL 585187, at *10 (D.N.J. Mar. 2, 2026).  Requiring declarations is burdensome, and this Court does not yet follow the District of New Jersey in issuing such a requirement.  But Respondents are cautioned that the Court is prepared to do so if its orders staying transfer continue to be violated.

## CONCLUSION

For the reasons stated above, Trejo-Trejo's Petition and Motion for TRO are **DENIED**.

**IT IS SO ORDERED,** this 11th day of May, 2026.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE